JOHNSON & PHAM, LLP
Christopher D. Johnson, SBN: 222698
    E-mail: cjohnson@johnsonpham.com
Christopher Q. Pham, SBN: 206697
    E-mail: cpham@johnsonpham.com
Marcus F. Chaney, SBN: 245227
    E-mail: mchaney@johnsonpham.com
Nicole Drey Huerter, SBN: 250235
    E-mail: ndrey@johnsonpham.com
6355 Topanga Canyon Boulevard, Suite 326
Woodland Hills, California 91367
Telephone:   (818) 888-7540
Facsimile:   (818) 888-7544

Attorneys for Plaintiff
ADOBE SYSTEMS INCORPORATED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADOBE SYSTEMS INCORPORATED, a Delaware Corporation,<br><br>    Plaintiff,<br><br>v.<br><br>DIGI SPOT, LLC, a Texas Limited Liability Company d/b/a DIGI SHOP and a/d/b/a DEAL-SMART; JABBAR MOHAMMED, an Individual d/b/a DIGITRONICS; and DOES 1-10, Inclusive,<br><br>    Defendants. | Case No.: 5:18-cv-05444<br><br>**COMPLAINT FOR DAMAGES:**<br><br>**(1) COPYRIGHT INFRINGEMENT [17 U.S.C. §501(a)]**<br><br>**(2) TRADEMARK INFRINGEMENT [15 U.S.C. §1114 /** *Lanham Act* **§32(a)]**<br><br>**(3) FALSE DESIGNATION OF ORIGIN / FALSE OR MISLEADING ADVERTISING / UNFAIR COMPETITION [15 U.S.C. §1125(a) /** *Lanham Act* **§43(a)]**<br><br>**(4) TRADEMARK DILUTION [15 U.S.C. §1125(c)]**<br><br>**(5) UNLAWFUL / UNFAIR / FRAUDULENT BUSINESS PRACTICES [***California Business & Professions Code* **§17200]**<br><br>**[DEMAND FOR JURY TRIAL]** |

COMES NOW, Plaintiff Adobe Systems Incorporated ("Plaintiff") to hereby file its Complaint for Damages against Defendants Digi Spot, LLC d/b/a Digi Shop and a/d/b/a Deal-Smart ("DIGI SPOT"), Jabbar Mohammed d/b/a Digitronics ("MOHAMMED"), and DOES 1-10, inclusive (collectively, "Defendants").

## PARTIES

1. Plaintiff is now, and was at the time of the filing of this Complaint and at all intervening times, a corporation duly organized and existing under the laws of the State of Delaware, having its principal place of business in San Jose, California.

2. Plaintiff is informed and believes that Defendant DIGI SPOT is a limited liability company, doing business as Digi Shop and also doing business as Deal-Smart, formed under the laws of the State of Texas, having its principal place of business in Houston, Texas.

3. Plaintiff is informed and believes that, at the time of its creation, now, and at all times relevant to the Complaint, Defendant DIGI SPOT did not and does not have sufficient funding to assume responsibility for its foreseeable and actual liabilities and were undercapitalized.

4. Plaintiff is informed and believes that since the time of its creation, now, and at all times relevant to this Complaint, Defendant DIGI SPOT has failed to observe corporate formalities required by law.

5. Plaintiff is informed and believes that Defendant MOHAMMED is an individual residing in and doing business as Digitronics from Houston, Texas.

6. Plaintiff is informed and believes that Defendant MOHAMMED is the managing member of Defendant DIGI SPOT and the moving force behind the actions of Defendant DIGI SPOT complained of herein.

7. Plaintiff is informed and believes that Defendant MOHAMMED is the alter ego of Defendant DIGI SPOT.

8. The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants herein named as DOES 1-10, inclusive, are unknown to Plaintiff. Plaintiff therefore sues said Defendants by such fictitious names. When the true names and capacities of said Defendants have been ascertained, Plaintiff will amend this pleading

accordingly.

9. Plaintiff further alleges that Defendants DIGI SPOT, MOHAMMED, and DOES 1-10, inclusive, sued herein by fictitious names, are jointly, severally and concurrently liable and responsible upon the causes of action hereinafter set forth.

10. Plaintiff is informed and believes and thereon alleges that at all times mentioned herein Defendants DIGI SPOT, MOHAMMED, and DOES 1-10, inclusive, and each of them, were the agents, servants and employees of every other Defendant and the acts of each Defendant, as alleged herein, were performed within the course and scope of that agency, service or employment.

## JURISDICTION

11. This Court has federal subject matter jurisdiction over this matter pursuant to 28 United States Code ("U.S.C.") §§1331 and 1338 (a) and (b), in that the case arises out of claims for copyright infringement under 17 U.S.C. §501(a), and trademark infringement, false designation of origin / false or misleading advertising / unfair competition, and dilution under the *Lanham Act* (15 U.S.C. §1051 *et seq.*). This Court has supplemental jurisdiction of state law claim pursuant to 28 U.S.C. §§1367(a) and 1338 (a) and (b).

12. Personal jurisdiction exists over Defendants because on information and belief, Defendants conduct business in California and within this judicial district, have purposefully directed their actions to California and this judicial district, and/or have otherwise availed themselves of the privileges and protections of the laws of the State of California, such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process. Among other things, Defendants have advertised, offered to sell, sold and distributed unauthorized software products to consumers that infringe the trademarks and copyrights of Plaintiff, a northern California-based software company, using the California-based platforms located at www.eBay.com and www.eCrater.com and the California-based payment processing services of PayPal, Inc., all while knowing or having reason to know that consumers throughout the United States, including within this judicial district, would purchase said unauthorized software products from Defendants.

**COMPLAINT FOR DAMAGES**

13. Venue is proper, *inter alia*, pursuant to 28 U.S.C. §1391(b), because on information and belief, a substantial part of the events or omissions giving rise to these claims occurred in this judicial district and has caused damages to Plaintiff in this district.

### INTRADISTRICT ASSIGNMENT

14. Pursuant to Rule 3-2(c) of the Local Rules of Practice in Civil Proceedings before the United States District Court for the Northern District of California ("Civil L.R.") and the Court's Assignment Plan, this is an Intellectual Property Action to be assigned on a district-wide basis.

15. Assignment to the San Jose Division would be appropriate, pursuant to Civil L.R. 3-2(e), because a substantial part of the events that give rise to Plaintiff's claims against Defendants occurred in Santa Clara County, California, where Plaintiff's principal place of business is located.

### GENERAL ALLEGATIONS

### Plaintiff and its Famous ADOBE® Software Products

16. Plaintiff is a global leader in developing and distributing innovative computer software. Its products and services offer developers and enterprises tools for creating, managing, delivering and engaging with compelling content across multiple operating systems, devices and media. The software industry is competitive, and Plaintiff undertakes great expense and risk in conceiving, developing, testing, manufacturing, marketing, and delivering its software products to consumers. Software piracy undermines Plaintiff's investment and creativity, and misleads and confuses consumers.

17. The success of Plaintiff's ADOBE® and ACROBAT® products and services, among others (collectively referenced and referred to herein as "Adobe-Branded Software"), is due in part to Plaintiff's marketing and promotional efforts. These efforts include advertising and promotion through Plaintiff's websites, print and other Internet-based advertising, among other efforts. Plaintiff has spent substantial time, money and effort in building up and developing consumer recognition, awareness and goodwill in its Adobe-Branded Software and the associated marks thereto.

/ / /

18. The success of the Adobe-Branded Software, and other products and services related thereto, is not due to Plaintiff's promotional efforts alone. Rather, the popularity of Adobe-Branded Software is also due in part to consumers and the word of mouth buzz consumers have generated.

19. As a result of Plaintiff's efforts, the quality of Plaintiff's products, and the promotion and word of mouth buzz, Adobe-Branded Software and the associated marks thereto have been prominently placed in the minds of the public. Consumers, purchasers and members of the public have become familiar with Plaintiff's software and other products and services and have come to recognize Adobe-Branded Software and the associated marks thereto and associate them exclusively with Plaintiff. Plaintiff has acquired a valuable reputation and goodwill among the public as a result of such association. Indeed, Adobe-Branded Software and the associated marks thereto are famous in the United States and throughout the world and have acquired secondary meaning in the minds of consumers.

20. While Plaintiff has gained significant common law trademark and other rights in its Adobe-Branded Software through its use, advertising and promotion, Plaintiff has also protected its valuable rights by filing for and obtaining federal trademark and copyright registrations.

21. Plaintiff has secured registrations for its ADOBE® and ACROBAT® word and design trademarks, among others, with the United States Patent and Trademark Office ("USPTO"). Specifically, Plaintiff owns and has registered the following marks ("Plaintiff's Trademarks"):

(i) "ADOBE," USPTO Reg. No. 1,475,793

(ii) "A ADOBE," USPTO Reg. No. 1,901,149

![Adobe logo]

(iii) "A," USPTO Reg. No. 2,081,343



(iv) "A," USPTO Reg. No. 1,852,943



(v) "ACROBAT," USPTO Reg. No. 1,833,219

(vi) "ACROBAT," USPTO Reg. No. 3,652,382

# ACROBAT

22. Similarly, Plaintiff's Adobe-Branded Software is copyrightable subject matter, and Plaintiff (or a predecessor-in-interest) has secured copyright registrations for various versions of its software, specifically including but not limited to: Adobe Acrobat X Standard for Windows© (TX 7-357-858), among others, with the United States Copyright Office ("Plaintiff's Copyrights").

**Plaintiff's Licensing Restrictions**

23. As part of its international licensing and distribution programs, Plaintiff imposes various restrictions on the distribution of all ADOBE® software, including Adobe-Branded Software. Every piece of Adobe-Branded Software is licensed. The Software License Agreement ("SLA"), which accompanies every piece of Adobe-Branded Software, explicitly states that all Adobe-Branded Software is licensed for use only and anyone obtaining Adobe-Branded Software is only granted a license for use. The SLA contains numerous restrictions and limitations on said use, including prohibiting the resale of Adobe-Branded Software.

24. In order to gain authorization to resell Adobe-Branded software, one must enter into a distribution or reseller agreement with Plaintiff. Every distribution or reseller agreement

entered into by Plaintiff also states that all Adobe-Branded Software is subject to a license with significant restrictions placed on the distributor's or reseller's ability to resell, including to whom they are authorized to resell. Plaintiff maintains title to the Adobe-Branded Software at all times and at no point does it transfer any ownership of title.

25. Subsequent purchasers (regardless of whether they are users or resellers) cannot receive more than the extent of rights possessed by the person or entity selling the Adobe-Branded Software to them. Accordingly, each and every purchaser, reseller, or user who acquires any Adobe-Branded Software acquires only a license to use, which is subject to numerous restrictions on the exact use, location of distribution, transfer, and even who is qualified to obtain the product in certain circumstances.

26. One specific type of software distributed by Plaintiff is that of Original Equipment Manufacturer ("OEM") versions of Adobe-Branded Software. OEM software is intended to be distributed only with approved hardware components as a bundle. OEM software may not be unbundled, distributed, or sold separately from the specific hardware components for which they were intended. OEM software may not be resold, pursuant to Plaintiff's licensing restrictions. OEM software is not the same as full retail versions of the same type of Adobe-Branded Software, usually offering less functionality and no technical support.

### **Defendants' Wrongful and Infringing Conduct**

27. Particularly in light of the success of Plaintiff and Plaintiff's products as well as the reputation they have gained, Plaintiff and its well-recognized products have become targets for unscrupulous individuals and entities who wish to take a free ride on the goodwill, reputation and fame Plaintiff has spent considerable effort to build up in its products and marks and the works embodied in Plaintiff's software products.

28. A large number of individuals and entities deal in unauthorized, infringing, pirated and/or counterfeit Adobe-Branded Software products and other products and services, including but not limited to the famous ADOBE® and ACROBAT® products. Their actions vary and include manufacturing, copying, exporting, importing, advertising, promoting, selling, and distributing counterfeit and/or otherwise unauthorized Adobe-Branded Software products.

29. Plaintiff investigates and enforces against such piratical and counterfeiting activity regularly and through such efforts learned of Defendants and Defendants' actions advertising, offering for sale, selling, and/or distributing infringing Adobe-Branded Software products through the Internet sales platforms located at www.eBay.com (hereinafter "eBay"), using seller ID "timothjamiso_0," and www.eCrater.com (hereinafter "eCrater"), user the seller IDs "digi-soft," "digitronics," and "deal-smart."

30. For every sale made through eBay and eCrater, Defendants transact payment through the Northern District of California-based, PayPal, Inc. (hereinafter "PayPal"). All money received by Defendants from their eBay and eCrater sales flows through California through the payment processor located at www.paypal.com.

31. Plaintiff has never authorized or consented to Defendants' use of Plaintiff's Trademarks, or any confusingly similar mark, or Plaintiff's Copyrights outside the use allowed in the SLA. Specifically, Plaintiff has never authorized Defendants to manufacture, copy, sell, distribute, unbundle, or alter any of Plaintiff's Copyrights or use any of Plaintiff's Trademarks on or in connection with such manufactured, copied, unbundled, or altered Adobe-Branded Software.

32. Defendants alter, unbundle, and/or change the components of OEM copies of Adobe-Branded Software, before offering for sale, selling, and/or distributing these OEM copies to resellers and end users in the United States and within this judicial district. Specifically, Defendants sell and distribute unauthorized OEM versions of Plaintiff's Adobe-Branded Software products without the hardware with which they were originally distributed.

33. Specifically, on or about September 16, 2016, Plaintiff purchased a purported "Adobe Acrobat X Standard" from Defendants through eCrater, under seller ID "digi-soft," for a cost of $111.99. Payment was made through PayPal to "Digi Shop" with an email address of alladsai@gmail.com.

34. On or about September 21, 2016, Plaintiff received a package from "Digi Shop, 13100 W BELLFORT AVE,914 HOUSTON TX 77099," pursuant to the September 16, 2016 order from "Digi Shop" through eCrater. The package contained software purporting to be ADOBE ACROBAT X STANDARD©. A disc featuring Plaintiff's Trademarks, labeled with

1  "FOR BUNDLES ONLY. Not to be sold separately," was sheathed in a white envelope with a
2  clear window. The software on the disc was then analyzed for authenticity and determined to be
3  an unauthorized OEM version of ADOBE ACROBAT X STANDARD©.

4      35.    On December 1, 2016, Plaintiff sent a notice to cease and desist to Defendants in
5  relation to the September 16, 2016 order through eCrater.

6      36.    On or about January 11, 2017, Plaintiff purchased a purported "Adobe Acrobat X
7  Standard Full Version for Windows" from Defendants through eBay, under seller ID
8  "timothjamiso_0," for a cost of $119.99. Payment was made through PayPal to "Digi Shop" with
9  an email address of alladsai@gmail.com.

10     37.    On or about January 18, 2017, Plaintiff received a package from "Digi Shop, 13100
11 W BELLFORT AVE, 914 HOUSTON TX 77099," pursuant to the January 11, 2017 order from
12 "Digi Shop" through eBay. The package contained software purporting to be ADOBE ACROBAT
13 X STANDARD©. A disc featuring Plaintiff's Trademarks, labeled with "FOR BUNDLES ONLY.
14 Not to be sold separately," was sheathed in a white envelope with a clear window. The software
15 on the disc was then analyzed for authenticity and determined to be an unauthorized OEM version
16 of ADOBE ACROBAT X STANDARD©.

17     38.    On or about October 23, 2017, Plaintiff purchased a purported "Adobe Acrobat X
18 Standard Full Version for Windows" from Defendants through eCrater, under seller ID "deal-
19 smart," for a cost of $94.00. Payment was made through PayPal to "Deal-Smart" with an email
20 address of jennamince@gmail.com.

21     39.    On or about November 2, 2017, Plaintiff received a package from "Digi Shop, 1
22 Fluor Daniel Dr Sugar Land TX 77478," pursuant to the October 23, 2017 order from "Deal-Smart"
23 through eCrater. The package contained software purporting to be ADOBE ACROBAT X
24 STANDARD©. A disc featuring Plaintiff's Trademarks, labeled with "FOR BUNDLES ONLY.
25 Not to be sold separately," was sheathed in a white envelope with a clear window. The software
26 on the disc was then analyzed for authenticity and determined to be an unauthorized OEM version
27 of ADOBE ACROBAT X STANDARD©.
28 / / /

40.  On or about March 20, 2018, Plaintiff purchased a purported "Adobe Acrobat X Standard Windows" from Defendants through eCrater, under seller ID "digitronics," for a cost of $99.00.  Payment was made through PayPal to "Deal-Smart" with an email address of jennamince@gmail.com.

41.  On or about March 30, 2018, Plaintiff received a package from "Deal-Smart, 1385 Swicegood rd Linwood NC 27299," pursuant to the March 20, 2018 order from "Deal-Smart" through eCrater.  The package contained software purporting to be ADOBE ACROBAT X STANDARD©.  A disc featuring Plaintiff's Trademarks, labeled with "FOR BUNDLES ONLY. Not to be sold separately," was sheathed in a white envelope with a clear window. The software on the disc was then analyzed for authenticity and determined to be an unauthorized OEM version of ADOBE ACROBAT X STANDARD©.

42.  On June 5, 2018, Plaintiff sent another notice to cease and desist to Defendants in relation to the September 16, 2016 order through eCrater.

43.  Defendants continue to offer for sale and sell unauthorized Adobe-Branded Software, despite receiving prior notice from Plaintiff.

44.  On information and belief, it has become apparent to Plaintiff that Defendants are engaged in an ongoing piratical concern whose primary business consists of systematically infringing upon Plaintiff's Trademarks and Copyrights in order to generate substantial illegal revenues.

45.  By these sales and on information and belief, Defendants have advertised, marketed, offered for sale, sold and distributed numerous unauthorized Adobe-Branded Software products to consumers that infringe on Plaintiff's Trademarks and Copyrights, resulting in thousands if not millions of dollars in ill-begotten gains from Defendants' infringement. Defendants' dealings in unauthorized software products violate Plaintiff's exclusive rights in Plaintiff's Copyrights and use images and marks that are confusingly similar to, identical to Plaintiff's Trademarks to confuse consumers and aid in the promotion and sales of Defendants' unauthorized product.

46.  Defendants' conduct and use began long after Plaintiff's adoption and use of its ADOBE® and ACROBAT® word and design trademarks, after Plaintiff obtained the copyright

and trademark registrations alleged above, and after Plaintiff's Trademarks became famous. Indeed, Defendants had knowledge of Plaintiff's ownership of the Trademarks, and of the fame in such Trademarks, prior to the actions alleged herein and adopted them in bad faith and with intent to cause confusion and dilute Plaintiff's Trademarks. Defendants also had knowledge of Plaintiff's ownership of its Copyrights and copied, imported, offered for sale, sold, and/or distributed unauthorized copies of the Copyrights in order to illegally profit from Plaintiff's Copyrights.

47. Defendants' actions were committed with full knowledge that their conduct constituted infringement of Plaintiff's Trademarks and Copyrights.

48. Defendants' actions were committed in bad faith and with the intent to dilute Plaintiff's Trademarks, and to cause confusion, mistake or to deceive the consuming public and the public at large as to the source, sponsorship and/or affiliation of Defendants and/or Defendants' unauthorized goods. By their wrongful conduct, Defendants have traded upon and diminished Plaintiff's goodwill.

49. In committing these acts, Defendants have, among other things, willfully and in bad faith committed the following, all of which has and will continue to cause irreparable harm to Plaintiff: (i) infringed Plaintiff's Copyrights; (ii) infringed and diluted Plaintiff's rights in Plaintiff's Trademarks; (iii) misled the public into believing there is an association or connection between Defendants and Plaintiff and/or the products advertised and sold by Defendants and Plaintiff; (iv) used false designations of origin on or in connection with its goods and services; (v) committed unfair competition; (vi) unfairly profited from such activity. Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiff.

**FIRST CAUSE OF ACTION**

**(Copyright Infringement against Defendants DIGI SPOT, LLC, JABBAR MOHAMMED, and DOES 1-10, Inclusive)**

**[17 U.S.C. §501(a)]**

50. Plaintiff repeats and re-alleges every allegation set forth in Paragraphs 1-49.

51. Plaintiff is the exclusive owner of copyrights in the Adobe-Branded Software along with images and other protectable works related thereto and possesses copyright registrations with

the United States Copyright Office relating to the same.

52. Defendants did not seek and failed to obtain Plaintiff's consent or authorization to import, utilize, manufacture, reproduce, copy, display, prepare derivative works, distribute, sell, transfer, rent, perform, and/or market Plaintiff's copyright-protected materials.

53. Without permission, Defendants intentionally and knowingly reproduced, counterfeited, copied, displayed, manufactured and/or distributed Plaintiff's protected works by importing, offering, advertising, promoting, retailing and/or selling counterfeit and/or unauthorized Adobe-Branded Software, which are, at a minimum, substantially similar to Plaintiff's Copyrights.

54. Defendants' acts as alleged herein, constitute infringement of Plaintiff's Copyrights, including Plaintiff's exclusive rights to reproduce, distribute and/or sell such protected material.

55. Defendants' knowing and intentional copyright infringement as alleged herein has caused and will continue to cause substantial and irreparable harm to Plaintiff and has and will continue to cause damage to Plaintiff. Plaintiff is therefore entitled to injunctive relief, including but not limited to preliminary relief, as well as damages, Defendants' profits, increased damages, and reasonable attorney's fees and costs.

## SECOND CAUSE OF ACTION

**(Infringement of Registered Trademarks against Defendants DIGI SPOT, LLC, JABBAR MOHAMMED, and DOES 1-10, Inclusive)**

**[15 U.S.C. §1114/*Lanham Act* §32(a)]**

56. Plaintiff repeats and re-alleges every allegation set forth in Paragraphs 1-55.

57. Plaintiff has continuously used Plaintiff's Trademarks in interstate commerce since at least as early as 1993.

58. Plaintiff, as the owner of all right, title and interest in and to Plaintiff's Trademarks, has standing to maintain an action for trademark infringement under the Trademark Statute, 15 U.S.C. §1114.

59. Defendants are, and at the time of their actions complained of herein were, actually aware that Plaintiff is the registered trademark holder of Plaintiff's Trademarks.

60.     Defendants did not and failed to obtain the consent or authorization of Plaintiff as the registered owner of Plaintiff's Trademarks to deal in and commercially distribute, market and sell Adobe-Branded Software products bearing Plaintiff's Trademarks into the stream of commerce.

61.     Defendants intentionally and knowingly used in commerce the reproductions, counterfeits, copies, and/or colorable imitations of Plaintiff's registered marks in connection with the sale, offering for sale, and/or distribution of Defendants' software products by importing, offering, advertising, promoting, retailing, selling, and/or distributing unauthorized copies of Adobe-Branded Software bearing Plaintiff's Trademarks.

62.     Defendants reproduced, counterfeited, copied, and colorably imitated Plaintiff's Trademarks and applied such reproductions, counterfeits, copies, or colorable imitations to labels, signs, prints, packages, wrappers, receptacles and/or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution and/or advertising of goods.  Defendants thereupon imported, offered, advertised, promoted, retailed, sold, and/or distributed unauthorized Adobe-Branded Software bearing Plaintiff's Trademarks.

63.     Defendants' egregious and intentional use and sale of unauthorized items bearing Plaintiff's Trademarks is likely to cause confusion or mistake, or to deceive, mislead, betray, and defraud consumers who believe that items being offered for sale by Defendants are authorized products manufactured and distributed by Plaintiff.

64.     Defendants' acts have been committed with knowledge of Plaintiff's exclusive rights and goodwill in Plaintiff's Trademarks.  Defendants' acts have been committed with knowledge that their conduct infringes Plaintiff's rights in Plaintiff's Trademarks.  Defendants have acted willfully, in bad faith, and with the intent to cause confusion, mistake or to deceive.

65.     Plaintiff has suffered and will continue to suffer substantial and irreparable injury, loss and damage to its rights in and to Plaintiff's Trademarks and the goodwill associated therewith, for which it has no adequate remedy at law.  Thus, Plaintiff requests injunctive relief, including but not limited to preliminary relief.

/ / /

66. Defendants' continued and knowing use of Plaintiff's Trademarks without Plaintiff's consent or authorization constitutes intentional infringement of Plaintiff's federally registered trademarks in violation of Section 32 of the *Lanham Act*, 15 U.S.C. §1114. Based on such conduct, Plaintiff is entitled to injunctive relief as well as monetary damages and other remedies provided by sections 1116, 1117, and 1118, including Defendants' profits, treble damages, reasonable attorneys' fees, costs and prejudgment interest.

## THIRD CAUSE OF ACTION

**(False Designation of Origin / False or Misleading Advertising / Unfair Competition against Defendants DIGI SPOT, LLC, JABBAR MOHAMMED, and DOES 1-10, Inclusive)**

**[15 U.S.C. §1125(a)/*Lanham Act* §43(a)]**

67. Plaintiff repeats and re-alleges every allegation set forth in Paragraphs 1-66.

68. Plaintiff, as the owner of all common law right, title, and interest in and to Plaintiff's Trademarks, has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, *Lanham Act* §43(a) (15 U.S.C. §1125). Plaintiff's Trademarks are inherently distinctive and/or have acquired distinctiveness.

69. Defendants have, without authorization, on or in connection with their goods and services, used in commerce marks that are confusingly similar to Plaintiff's Trademarks and/or have made false designations of origin which are likely to cause confusion, mistake or to deceive as to the affiliation, connection or association of Defendants with Plaintiff and/or as to the origin, sponsorship or approval of Defendants' goods or services or commercial activities.

70. Defendants' conduct described above violates the *Lanham Act*, and Defendants have unfairly competed with and injured Plaintiff and, unless immediately restrained, will continue to injure Plaintiff, causing damage to Plaintiff in an amount to be determined at trial. Defendants' actions are causing and will continue to cause irreparable injury to Plaintiff's goodwill and reputation associated with the value of Plaintiff's Trademarks.

71. On information and belief, the conduct of Defendants has been knowing, deliberate, willful, and intended to cause confusion, mistake or deception, all in blatant disregard of Plaintiff's

Rights.

72. Defendants knew or, by the exercise of reasonable care, should have known that their adoption and commencement of use in commerce and continuing use of marks that are confusingly similar to and constitute a counterfeit reproduction of Plaintiff's Trademarks would cause confusion, mistake, or deception among purchasers, users and the public.

73. Defendants' egregious and intentional use and sale of counterfeit and/or unauthorized software bearing Plaintiff's Trademarks unfairly competes with Plaintiff and is likely to cause confusion, mistake or to deceive, mislead, betray, and defraud consumers to believe that Defendants' unauthorized products are genuine, authorized Adobe-Branded Software.

74. Defendants' continuing and knowing use of Plaintiff's Trademarks constitutes false designation of origin and unfair competition in violation of Section 43(a) of the *Lanham Act*, 15 U.S.C. §1125(a), causing Plaintiff to suffer substantial and irreparable injury for which it has no adequate remedy at law.

75. Defendants' wrongful conduct has permitted or will permit them to make substantial sales and profits on the strength of Plaintiff's marketing, advertising, sales and consumer recognition. As a direct and proximate result of Defendants' wrongful conduct, as alleged herein, Plaintiff has been and will be deprived of sales of its products in an amount as yet unknown but to be determined at trial, and has been deprived and will be deprived of the value of its marks as commercial assets in an amount as yet unknown but to be determined at trial. Plaintiff seeks an accounting of Defendants' profits and requests that the Court grant Plaintiff three times that amount in the Court's discretion.

76. Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief, including but not limited to preliminary relief, as well as monetary damages and other remedies as provided by the *Lanham Act*, including Defendants' profits, treble damages, reasonable attorneys' fees, costs and prejudgment interest.

/ / /

/ / /

/ / /

## FOURTH CAUSE OF ACTION

**(Trademark Dilution against Defendants DIGI SPOT, LLC, JABBAR MOHAMMED, and DOES 1-10, Inclusive)**

**[15 U.S.C. §1125(c)]**

77. Plaintiff repeats and re-alleges every allegation set forth in Paragraphs 1-76.

78. Plaintiff's Trademarks are distinctive and famous within the meaning of the *Lanham Act*.

79. Upon information and belief, Defendants' unlawful actions began long after Plaintiff's Trademarks became famous, and Defendants acted knowingly, deliberately and willfully with the intent to trade on Plaintiff's reputation and to dilute or tarnish Plaintiff's Trademarks. Defendants' conduct is willful, wanton and egregious.

80. Defendants' intentional sale of counterfeit and/or unauthorized software bearing Plaintiff's Trademarks is likely to cause confusion, mistake, or to deceive, mislead, betray, and defraud consumers to believe that Defendants' substandard and/or limited software are authorized, full retail versions of Adobe-Branded Software. The actions of Defendants complained of herein have diluted and will continue to dilute Plaintiff's Trademarks and are likely to impair the distinctiveness, strength and value of Plaintiff's Trademarks and injure the business reputation of Plaintiff and its marks.

81. Defendants' acts have caused and will continue to cause Plaintiff irreparable harm. Plaintiff has no adequate remedy at law to compensate it fully for the damages that have been caused and which will continue to be caused by Defendants' unlawful acts, unless they are enjoined by this Court.

82. As the acts alleged herein constitute a willful violation of section 43(c) of the *Lanham Act*, 15 U.S.C. §1125(c), Plaintiff is entitled to injunctive relief, including but not limited to preliminary relief, as well as monetary damages and other remedies provided by 15 U.S.C. §§1116, 1117, 1118, and 1125(c), including Defendants' profits, treble damages, reasonable attorney's fees, costs and prejudgment interest.

/ / /

## FIFTH CAUSE OF ACTION

**(Unlawful, Unfair, Fraudulent Business Practices against Defendants DIGI SPOT, LLC, JABBAR MOHAMMED, and DOES 1-10, Inclusive)**

[*California Business & Professions Code* **§17200** *et seq***.**]

83. Plaintiff repeats and re-alleges every allegation set forth in Paragraphs 1-82.

84. By marketing, advertising, promoting, selling and/or otherwise dealing in the counterfeit and/or unauthorized Adobe-Branded Software bearing Plaintiff's Trademarks, Defendants have engaged in unfair competition including unlawful, unfair and fraudulent business practices in violation of *California Business and Professions Code* §17200 *et seq*.

85. Defendants' marketing, advertising, promoting, selling and/or otherwise dealing in counterfeit and/or unauthorized Adobe-Branded Software is in violation and derogation of Plaintiff's rights and is likely to cause confusion, mistake and deception among consumers and the public as to the source, origin, sponsorship, or quality of the goods of Defendants, thereby causing loss, damage and injury to Plaintiff and to the purchasing public. Defendants' conduct was intended to cause such loss, damage and injury.

86. Defendants knew or by the exercise of reasonable care should have known that their marketing, advertising, promoting, selling and/or otherwise dealing in and their continuing marketing, advertising, promoting, selling and/or otherwise dealing in the counterfeit and/or unauthorized product would cause confusion, mistake or deception among purchasers, users and the public.

87. By marketing, advertising, promoting, selling and/or otherwise dealing in and their continuing marketing, advertising, promoting, selling and/or otherwise dealing in counterfeit and/or unauthorized versions of Adobe-Branded Software bearing Plaintiff's Trademarks, Defendants intended to, did and will induce customers to purchase their products by trading off the extensive goodwill built up by Plaintiff in its marks.

88. Upon information and belief, the conduct of Defendants has been knowing, deliberate, willful, and intended to cause confusion, mistake or to deceive, all in blatant disregard of Plaintiff's rights.

89. Defendants' wrongful conduct, as alleged above, has permitted and will permit them to make substantial sales and profits on the strength of Plaintiff's nationwide marketing, advertising, sales and consumer recognition. As a direct and proximate result of Defendants' wrongful conduct, as alleged herein, Plaintiff has been and will be deprived of substantial sales of its products in an amount as yet unknown but to be determined at trial, and has been and will be deprived of the value of its trademarks as commercial assets, in an amount as yet unknown but to be determined at trial. Plaintiff seeks restitution in this matter, including an order granting Defendants' profits stemming from their infringing activity, and Plaintiff's actual and/or compensatory damages.

90. Plaintiff has no adequate remedy at law for Defendants' continuing violation of its rights set forth above. Plaintiff seeks injunctive relief, including but not limited to preliminary relief.

91. Plaintiff further requests a court order that an asset freeze or constructive trust be imposed over all monies in Defendants' possession that rightfully belong to Plaintiff.

**PRAYER OF RELIEF**

WHEREFORE, Plaintiff Adobe Systems Incorporated prays for judgment against Defendants Digi Spot, LLC, Jabbar Mohammed, and Does 1-10, inclusive, and each of them, as follows:

A. For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for copyright infringement under 17 U.S.C. §501(a);

B. For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for trademark infringement under 15 U.S.C. §1114(a);

C. For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for false designation of origin and unfair competition under 15 U.S.C. §1125(a);

D. For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for trademark dilution under 15 U.S.C. §1125(c);

E.  In the alternative to actual damages and Defendants' profits for the infringement of Plaintiff's Copyrights pursuant to 17 U.S.C. §504(b), for statutory damages pursuant to 17 U.S.C. §504(c), which election Plaintiff will make prior to the rendering of final judgment;

F.  For restitution in an amount to be proven at trial for unfair, fraudulent and illegal business practices under *California Business and Professions Code* §17200;

G.  For consequential and compensatory damages;

H.  For an injunction by this Court prohibiting Defendants from engaging or continuing to engage in the unlawful, unfair, or fraudulent business acts or practices described herein, including the advertising and/or dealing in any counterfeit and/or unauthorized product; the unauthorized use of any mark, copyright or other intellectual property right of Plaintiff; acts of trademark infringement or dilution; acts of copyright infringement; false designation of origin; unfair competition; and any other act in derogation of Plaintiff's rights;

I.  For an order from the Court requiring that Defendants provide complete accountings and for equitable relief, including that Defendants disgorge and return or pay their ill-gotten gains obtained from the illegal transactions entered into and/or pay restitution, including the amount of monies that should have been paid if Defendants complied with their legal obligations, or as equity requires;

J.  For an order from the Court that an asset freeze or constructive trust be imposed over all monies and profits in Defendants' possession which rightfully belong to Plaintiff;

K.  For destruction of the infringing articles in Defendants' possession under 15 U.S.C. §1118 and 17 U.S.C. §503;

L.  For treble damages suffered by Plaintiff as a result of the willful and intentional infringements and acts of counterfeiting engaged in by Defendants, under 15 U.S.C. §1117(b);

M.  For damages in an amount to be proven at trial for unjust enrichment;

N.  For Plaintiff's reasonable attorney's fees;

    O.  For all costs of suit; and

    P.  For such other and further relief as the Court may deem just and equitable.

DATED: September 5, 2018                         JOHNSON & PHAM, LLP

                                                        By: /s/ Marcus F. Chaney  
                                                        Marcus F. Chaney, Esq.  
                                                        Attorney for Plaintiff  
                                                        ADOBE SYSTEMS INCORPORATED

## **DEMAND FOR JURY TRIAL**

Plaintiff Adobe Systems Incorporated respectfully demands a trial by jury in this action pursuant to Civil L.R. 3-6(a).

DATED: September 5, 2018                         JOHNSON & PHAM, LLP

                                                        By: /s/ Marcus F. Chaney  
                                                        Marcus F. Chaney, Esq.  
                                                        Attorney for Plaintiff  
                                                        ADOBE SYSTEMS INCORPORATED